# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3598

_____

United States of America

*Plaintiff - Appellee*

v.

Pierre Watson

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: December 10, 2018
Filed: February 5, 2019
[Unpublished]

_____

Before SMITH, Chief Judge, WOLLMAN and GRASZ, Circuit Judges.

_____

PER CURIAM.

Pierre Watson was in custody and awaiting trial on separate federal charges when he conspired to commit bank fraud with Taion Brown and Justice Carter, neither of whom was incarcerated.[1]  Because Watson discussed the schemes with

_____

[1]See United States v. Watson, 883 F.3d 1033 (8th Cir. 2018).

Brown via monitored telephone calls and letters, as well as during jail visits, the conspiracy was soon discovered and the three were charged with federal offenses. Following a bench trial, the district court[2] found Watson guilty of conspiracy to commit bank fraud in violation of 18 U.S.C. §§ 1349 and 1344 (count 1) and three counts of bank fraud in violation of 18 U.S.C. § 1344 (counts 2-4). Watson was sentenced to 48 months' imprisonment. He appeals, arguing that the evidence was insufficient to support a finding of guilt and that the district court abused its discretion when it varied upward from the U.S. Sentencing Guidelines (Guidelines) range. We affirm.

We review *de novo* the sufficiency of the evidence, "viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor and accepting all reasonable inferences that support the verdict." United States v. Grimes, 825 F.3d 899, 902 (8th Cir. 2016). "In passing upon the sufficiency of the evidence to sustain an ultimate finding of guilt following a bench trial, we apply the same standard of review that is applied where a defendant has been found guilty by a jury; that is to say, the finding must be sustained if it is supported by substantial evidence." United States v. Peterson, 632 F.3d 1038, 1041 (8th Cir. 2011).

To establish bank fraud, the United States was required to prove beyond a reasonable doubt that (1) Watson knowingly executed, or attempted to execute, a scheme to obtain any of the moneys and funds under the custody of a financial institution by means of material false or fraudulent pretenses or representations; (2) Watson did so with the intent to defraud; and (3) the financial institution was insured

---

[2]The Honorable John A. Ross, United States District Judge for the Eastern District of Missouri.

by the Federal Deposit Insurance Corporation (FDIC).[3]  See 18 U.S.C. § 1344; see also United States v. Lewis, 260 F.3d 855, 855 (8th Cir. 2001).

Watson argues that the evidence was insufficient to support his conviction on count 2, which was based on a check-kiting scheme.  To prove that Watson engaged in the scheme, the government presented Brown's testimony, as well as bank records, a letter from Watson to Brown, recordings of calls between Watson and Brown, and documents that Brown brought to her visits with Watson.  The evidence showed that Brown, at Watson's behest, opened checking accounts at two banks and deposited $25 into each account.  Brown testified that she then deposited a $200 check from her first account into her second account, notwithstanding her and Watson's knowledge that the first account had insufficient funds to honor the check.  Brown then withdrew $200 in cash from the second account, purchased a $200 money order with the withdrawn funds, and deposited the money order into her first account.  Substantial evidence thus supports the district court's finding of guilt on count 2.  See United States v. Whitehead, 176 F.3d 1030, 1034, 1041 (8th Cir. 1999) (concluding that there was sufficient evidence to prove a scheme existed wherein the defendant deposited insufficient funds checks into multiple accounts to inflate the account balances); see also United States v. Blumeyer, 114 F.3d 758, 767 (8th Cir. 1997) (concluding that "the government need not prove intent directly" and that the fact-finder "may infer intent to defraud from circumstantial evidence").

Watson also contests his conviction on count 3, another check-kiting scheme. The government presented similar evidence to prove that Watson instructed Brown to recruit others to engage in check-kiting and that Brown successfully recruited her cousin, Justice Carter.  Carter, accompanied by Brown, opened checking accounts at

_____

[3]It is undisputed that the banks referred to in this case are FDIC-insured institutions.

two banks. The two then deposited a starter check for $1,000 from Carter's first account into Brown's bank account, both knowing Carter's account balance was only $50. Brown proceeded to immediately withdraw a portion of the illegitimate funds from her account. Substantial evidence thus likewise supports the conviction on count 3.

Watson argues that the evidence does not support his conviction on count 4, which was based on Brown's act of depositing a check from DyAnthony Owens's closed bank account into her account. To prove count 4, the government presented the testimony of Owens and Brown, as well as bank records and recordings of phone calls. The evidence showed that Watson instructed Brown to contact and obtain checks from a man named Lumpy. Brown followed Watson's instructions and received from Lumpy checks bearing Owens's name. Owens testified that his wallet, including his debit card and PIN, had been stolen, that the signature on the check was not his, and that he did not know Watson or Brown. This evidence was sufficient to establish that a scheme existed and that Watson intended to commit bank fraud.

Finally, Watson contends that the evidence was insufficient to support a finding of guilt on the conspiracy charge. To prove conspiracy to commit bank fraud, the government was required to establish that an agreement to achieve bank fraud existed, that Watson knew of the agreement, and that Watson knowingly became part of the agreement with at least one other person. See United States v. Adejumo, 772 F.3d 513, 522 (8th Cir. 2014); see also United States v. Krug, 822 F.3d 994, 999 (8th Cir. 2016). Watson claims that the evidence fails to show that he engaged in a conspiracy to commit bank fraud, but rather shows only that he had merely provided bad advice to Brown and discussed schemes that never came to fruition. As noted above, however, the government sufficiently established that Watson had knowingly entered into an agreement to engage in a check-kiting scheme. See Krug, 822 F.3d at 999 (concluding that a defendant's involvement in a conspiracy may be proved by

circumstantial evidence). The evidence was thus sufficient to support Watson's conspiracy conviction.

Watson next argues that the district court abused its discretion in varying upward from the Guidelines advisory sentencing range of 21 to 27 months' imprisonment. Absent a challenge to procedural error, we review the substantive reasonableness of a sentence for abuse of discretion. United States v. Stoner, 795 F.3d 883, 884 (8th Cir. 2015). When considering a district court's above-Guidelines-range variance, we "give due deference to the district court's decision that the [18 U.S.C.] § 3553(a) factors, on a whole, justify the extent of the variance." Id. at 885 (quoting Gall v. United States, 552 U.S. 38, 51 (2007)).

Watson's sole argument is that his 48-month sentence is substantively unreasonable because the § 3553(a) factors cited by the district court in support of the upward variance were already considered in calculating the Guidelines range. We have held that "factors that have already been taken into account in calculating the advisory Guidelines range can nevertheless form the basis of a variance." Id. (quoting United States v. David, 682 F.3d 1074, 1077 (8th Cir. 2012)). When a defendant's "criminal history is a factor already considered in the computation of the Guidelines range[, it] does not render the district court's consideration of it under § 3553(a) erroneous." United States v. Waters, 883 F.3d 1022, 1028 (8th Cir. 2018) (per curiam). Here, the district court considered that Watson was incarcerated at the time of his offense, that he had a long criminal history, that he organized and led the conspiracy, and that his previous sentences had not deterred him. The district court did not abuse its discretion in determining that the facts justified an upward variance, as it was permitted to do so when the Guidelines did "not accurately reflect [Watson's] history and conduct." Stoner, 795 F.3d at 885.

The judgment is affirmed.

_____